UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| Gregory Fondren and Latasha Wilson, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | No.  24-cv-01299 |
| v. | Judge Michael M. Mihm |
| Superior Consolidated Industries, Inc. | |
| Defendant. | |

**PLAINTIFFS' AMENDED UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT**

Now comes the Plaintiffs, through Counsel, and for the reasons set forth herein, and hereby respectfully requests that the Court issue an order approving the Parties' Revised Settlement and Release Agreement (the "Agreement"). A true and complete copy of the Revised Agreement is attached hereto as Exhibit A.  A proposed order of approval is attached hereto as Exhibit B. The Declaration of Michael L. Fradin is attached as Exhibit C.  The Report of Mediation is attached as Exhibit D.  The proposed Notice to the Collective is attached as Exhibit E.

**I.    Introduction**

Named Plaintiffs, Gregory Fondren and Latasha Wilson, on behalf of themselves and all others similarly situated ("Named Plaintiffs"), and Superior Consolidated Industries, Inc. ("Superior" or "Defendant") (collectively "the Parties"), have reached a settlement in this lawsuit. The Settlement was the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after exchanging extensive data and information, including payroll, computer, and timekeeping records, and after participating in a day-long, in-person mediation with mediator, Scott A. Shore. The terms of the Settlement are reasonable, appropriate, and fair to all Parties,

including the Collective Members.

After approval, all Collective Members will receive a Settlement Payment issued by an Administrator in exchange for a limited release of all the claims they have in the case for unpaid minimum and overtime wages that were asserted in this Lawsuit or that arise out of the facts asserted in this Lawsuit between August 25, 2021 through June 22, 2025.

For the reasons explained below, the Parties' Agreement is a fair and reasonable resolution of a *bona fide* dispute between the Parties. As a result, Plaintiffs respectfully request the Court approve the Agreement.

## II.    Facts and Summary of Negotiations

On August 25, 2024, Plaintiffs initiated the lawsuit *Fondren v. Superior Consolidated, Inc.* Case No. 24-cv-01299 (the "Lawsuit"). The Complaint alleges that Defendant violated the Fair Labor Standards Act ("FLSA") by all overtime wages due to Plaintiffs and other similarly situated hourly employees. Specifically, Plaintiffs' Complaint alleges that Defendant failed to pay for all time that they spent putting on and taking off protective gear and that Defendant miscalculated their regular rate of pay for purposes of calculating their overtime rates.

Rather than incur the risk and expense of litigating the Lawsuit, the Parties agreed to attempt to mediate a resolution with the assistance of mediator, Scott A. Shore. Prior to attending the mediation, Superior provided Plaintiffs' Counsel responses to Plaintiff's pre-mediation "wish list" including time and pay data necessary to analyze the damages at stake. (*See id.* at ¶ 4.). With this information, Plaintiffs' Counsel formulated a comprehensive damages analysis. (*Id*). The parties exchanged mediation memorandums and settlement offers prior to the mediation session. (*Id* at ¶ 5). The parties participated in an all-day mediation with Scott Shore on June 22, 2025. That mediation was successful, resulting in the Agreement of the parties which is now memorialized in writing herein.

The Agreement offers significant advantages over the continued prosecution of this case: Plaintiffs and the Collective Members will receive significant financial compensation within weeks of the Final Approval Order's entry, and each Collective Member maintains the right to determine whether or not to accept the payment and cash or deposit his/her Settlement Payment, thereby releasing their claims for unpaid minimum wage and compensation against Superior or to forego the payment and maintain the right to pursue individual litigation on their own. The Parties agree that the terms of the Agreement, summarized below, are fair and reasonable and should be approved by this Court.

### III.   The Settlement Agreement

The Agreement provides for a gross payment from Superior in the amount of $750,000.00. Under the Agreement and subject to approval by this Court, the Parties seek to certify a collective action for settlement purposes under the FLSA and send notice to all current and former non-exempt employees of Superior's Peoria, Illinois Plant between August 25, 2021 through June 22, 2025. The Agreement provides for Settlement Payments for all such individuals that elect to participate. Such individuals will release all unpaid minimum and overtime wages that were asserted in the Lawsuit or that arise out of the facts asserted in the Lawsuit, including, but not limited to any unpaid wage claims under the Fair Labor Standards Act, Illinois Minimum Wage Law, Illinois Wage Payment and Collections Act, and any applicable state, local or municipal law or regulation, and any related claims for statutory damages, liquidated damages, penalties, attorneys' fees and costs, and interest. The release encompasses all such claims from August 25, 2021 through June 22, 2025.

The Agreement further provides for Service Awards to the Named Plaintiffs in the Amount of $7,500.00 each in recognition of their efforts and service to the benefit of the Collective Members. The Agreement further provides for an award of attorney fees of one-third of the gross

3

amount ($250,000.00), reimbursement of costs to Plaintiffs' Counsel in an amount not to exceed $7,800.00, and payment of costs to the Settlement Administrator not to exceed $20,000.00.

The Parties ask the Court to certify, for settlement purposes only, a collective action pursuant to Section 216(b) of the FLSA. The group who would be provided notice and an opportunity to join this lawsuit and participate in the Settlement is composed of:

> **All non-exempt hourly employees who worked over 40 hours in a week for Superior Consolidated Industries, Inc. between August 21, 2021 and June 22, 2025 and were paid a bonus.**

The certification of a collective action under the FLSA for settlement purposes would allow the Parties to send a Court-approved Notice Packet to all of the Collective Members. (Exhibit E). Along with the Court-approved Notice, all Collective Members will receive a check they can endorse and cash to join the settlement. The Notice Packet explains that by signing and cashing the check, the individual is agreeing to join the Lawsuit as an Opt-In Plaintiff and participate in the settlement. As the Parties explain in more detail below, there are no due process concerns because under the opt-in FLSA settlement process, only those individuals who voluntarily agree to join the lawsuit and cash the check would be bound by the Settlement. If a Collective Member chooses not to join this lawsuit and not cash their settlement check, then that individual loses no rights and is free to pursue their individual claim, if desired, as they see fit. Unlike a class action, where there are absent class members and a class member may lose rights unless they opt-out, in a collective action settlement such as this one, individuals forfeit no rights unless they voluntarily choose to be part of the lawsuit and cash the check.

**IV.    Argument**

    A.    <u>A One-Step Approval Process for FLSA Settlements Is Standard</u>

Pursuant to the FLSA, claims for back wages and other damages arising under the FLSA may be settled or compromised with the approval of the District Court or Secretary of Labor. *See Brooklyn Savings Bank v. O'Neil,* 324 U.S. 67 (1945); *D.A. Schulte, Inc. v. Gangi,* 328 U.S. 108 (1946); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982). Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Furman v. At Home Stores LLC,* No. 16-cv-8190, 2017 WL 1730995, at *1 (N.D. Ill. May 1, 2017).

In the Seventh Circuit and throughout the country, a one-step approval process is appropriate in FLSA opt-in settlements that do not include Rule 23 opt-out classes. *See, e.g., Prena v. BMO Fin. Corp.*, No. 15-C-09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in, in order to be bound by the settlement (including the settlement's release provision)."); *Roberts v. Apple Sauce, Inc.*, No. 3:12-CV-830-TLS, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014); *see also Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-cv-00738-RNC, 2014 WL 3778211, at *9-10 (D. Conn. July 31, 2014) (approving FLSA notice providing notice of settlement terms and options facing class), 2014 U.S. Dist. LEXIS 106042 (D. Conn. July 31, 2014).

**V.    This Court Should Grant the Motion and Find the Agreement Fair and Reasonable**

    A.    <u>The Agreement Is Fair and Reasonable and Should Be Approved</u>

The Court should approve the Settlement Agreement because it is fair and reasonable. To approve the Settlement, the Court should determine that the proposed settlement reflects a reasonable compromise over contested issues. *Furman v. At Home Stores LLC, No. 16-cv-8190,* 2017 WL 1730995, at *1 (N.D. Ill. May 1, 2017). Courts approve wage and hour settlements reached as a result of contested litigation to resolve *bona fide* disputes. *See, e.g., Lynn's Food*

5

*Stores*, 679 F.2d at 1355; *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354.

Here, the Agreement was negotiated at arm's-length by experienced counsel; the amount Superior has agreed to pay the Collective Members is fair and adequate; there is a significant risk to the Collective Members of an adverse judgment on the merits or whether the case should proceed as a collective action; the Collective Members will receive adequate notice sufficient for each potential opt-in to assess their rights; the members of the Collective Members are sufficiently similar for *final* certification for settlement purposes; and the amount of fees, costs and incentive payments requested are in line with sums previously awarded in similar cases. This Agreement is particularly fair and reasonable because, unlike a class action settlement, only those individuals who voluntarily choose to become part of the lawsuit, and thus to participate in the settlement, are bound by it. As the parties explain more fully below, any potential Collective Member who thinks the settlement is unfair is not obligated to participate in the settlement and is not bound by it.

Mediator Scott A. Shore's Report of Mediation (Exhibit D) has summarized the fairness of the structure of the settlement and the scope of the release:

> The structure of the settlement reached by the parties appears to be favorable to Collective Members because they will receive payments without having to complete a claim form and they only release claims if they endorse a settlement check. Because the net settlement amount is approximately triple the base damages, I was convinced by the parties in the process of mediating a resolution of the case that the scope of the release to include parallel state law claims is customary, fair and reasonable for the Collective Members. Although the parties expect all or close to all of the Collective Members to endorse their check, the procedure of this settlement provides the Collective members with the option to not release their claims by simply not endorsing their check. (Scott A.

Shore's Report of Mediation ¶8).

B. <u>Settlement is the Product of Arm's Length Negotiations of a Bona Fide Dispute</u>

The Agreement in this case is the result of arm's-length negotiations, involving the exchange of class/collective discovery and extensive settlement discussions between counsel for the Parties. Additionally, Plaintiffs recognize the expense and length of the proceedings necessary to continue the litigation against Superior through trial and through any possible appeals. Plaintiffs have also taken into account the uncertainty and risk of the outcome of further litigation, the defenses raised by Superior and the difficulties and delays inherent in litigation.

Prior to attending the mediation, Plaintiffs' counsel performed a comprehensive damages analysis of the data. (*See* Fradin Dec. at ¶4 .). Plaintiffs' counsel analyzed the records provided by Superior in order to analyze exposure during the relevant time period. Defendant's counsel provided the video evidence related to the donning and doffing claims that led Plaintiffs' Counsel to compute the maximum damages exposure to Superior based on the alleged regular rate of pay miscalculations. (*See id.* at ¶ 4.).

Plaintiffs' Counsel has considerable experience in litigation of class and collective actions, including wage and hour matters. (*See* Fradin Decl. at ¶ 9.). Plaintiffs' Counsel determined as a result of their analysis of all the information provided that Superior had viable defenses to Plaintiffs' claims in that certain categories of bonuses could have been deemed discretionary and therefore not legally required to be included in the regular rates of pay for the purposes of computing overtime and Defendant provided video footage to the mediator supporting its argument that the donning and doffing was de minimus (*See Id.* at ¶ 8.). These issues could have served as obstacles to any efforts to certify a collective or class in this matter. (*Id*). Therefore, Plaintiffs' Counsel believes that there is significant uncertainty and risk in continuing the litigation. (*Id*), Thus, Counsel has determined that the monetary terms of each Plaintiffs' respective

7

settlement are fair, adequate, and reasonable, and in the best interests of each Plaintiff. (*Id*).

According to Scott A. Shore,

> Concluding a full day of mediation, I encouraged the parties to consider a gross settlement of $750,000.00, with checks to be sent to the collective without the need for them to file any claim form. The basis of the proposal is that the collective, after fees and costs, would be paid nearly $450,000.00, which the parties calculated to be treble the extrapolated base damages, after fees and costs. (Report of Mediation ¶6).

C.     The Settlement Amount is Fair

Not only is the Agreement the product of an adversarial, non-collusive process, but the amount to be paid to the Collective Members is fair and reasonable. During the mediation process, it was determined that Superior's exposure on the regular rate claims, if Plaintiffs and all non-exempt employees were successful at trial and able to prove that the bonuses should have been included in the regular rate of pay, would result in unpaid overtime of approximately $150,000; (*See* Fradin Dec. at ¶ 10.). Statutory penalties associated with those unpaid wages brought Superior's total exposure to approximately $450,000 (*Id*).

As such, the gross amount due under the Agreement represents over a 100% recovery of all unpaid wages including available statutory penalties recoverable on Plaintiff's and the Collective Members' "best day in court" under the IMWL "regular rate" claims. Such a recovery is far beyond the thresholds necessary to approve a settlement. *Mars Steel Corp.v Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding a settlement of 10% of the total sought adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, 2016 WL 5907869, at *7-8 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (finding that a recovery of one-third of the owed wages for class

members, before deducting attorneys' fees and costs, is "well above" average).

    D.    <u>Due Process Considerations</u>

Section 216(b) collective actions such as this do not implicate the same due process concerns as Rule 23 class actions because they require workers to voluntarily opt-in to the litigation. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g., Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (stating that due process concerns present in Rule 23 class actions are not present in FLSA collective actions). There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they decide to participate. *Prena*, 2015 WL 2344949 at *1; *Woods*, 686 F.2d at 580.

In this case, each Collective Member only has to timely sign and cash the check enclosed in the Notice Packet, and only if they independently decide to cash the check will they be bound by the settlement. Any individual who chooses not to cash the Settlement Check is not bound in any way by the settlement or any release. That significant difference from a class action settlement weighs in favor of final approval since the individual class members will have the opportunity to make an informed decision about whether to join the settlement and will not be bound by it unless they affirmatively choose to do so.

9

E. The Service Award to Named Plaintiffs Should Be Approved as Fair and Reasonable

The settlement agreement allocates $7,500 as a service award to each Named Plaintiff. Plaintiffs in class and collective action lawsuits play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g., Cook v. Niedert*, 142 F.3d 1004,1006 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012). This is especially true in employment litigation. *See Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.").

In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook*, 142 F.3 at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012).

In this case, Plaintiffs worked diligently to protect and advocate on behalf of the Class. Plaintiffs also contributed significantly to the settlement of the case as their active roles in the exchange of information detailed herein enabled the parties to determine the proper scope of settlement negotiations and their first-hand knowledge proved valuable in allowing the parties to understand the risks of litigation. (Fradin Decl. at ¶ 11).

The service award amount is reasonable. *See Lucas v. CITGO Petroleum Corporation*,

Case No. 1:21-cv-05770, Doc. #49 (N.D. Ill., Sept. 19, 2023) (awarding $7,500 to named plaintiff); *Jordan v. GoHealth, LLC,* Case No. 1:21-cv-4736 (N.D. Ill. Jun. 21, 2022) (awarding $7,500 to named plaintiff); *Shaw v. Navistar, Inc.* Case No. 1:23-cv-16070 Doc #49 (N.D. Ill. June 10, 2025) (awarding $7,500 to named plaintiff); *Zolkos*, 2015 WL 4275540, at *3 (awarding $10,000 to each of the Named Plaintiffs); *Chesemore*, 2014 WL 4415919, at *5 (stating "[a]s for appropriate amount, district courts in the Seventh Circuit have awarded incentive fee awards ranging from $5,000 to $25,000"); *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510997, at *11 (N.D. Ill. Aug. 26, 2013) (approving $15,000 award for two class representatives because of active participation in litigation); *Mullins*, 2019 WL 275711, at *6 (approving $10,000 service award); *Arledge*, 2018 WL 5023950, at *6 (approving $10,000 service award); *Briggs*, 2016 WL 7018566, at *3 (approving $12,500 in service award to two plaintiffs in FLSA settlement for a total of $25,000 in service awards); *Castillo*, 2016 WL 7451623, at *3-4 (approving $10,000 service award to four plaintiffs in FLSA settlement for a total of $40,000 in service awards); *Furman v. At Home Stores LLC*, No. 1:16-cv-081900, 2017 WL 1730995, at *3 (awarding $10,000 service award).

F.  <u>Attorneys' Fees and Costs Should Be Approved As Fair And Reasonable</u>

The norm in the Seventh Circuit is to use the percentage of the fund method in common fund cases like this one. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014); *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003) (preferring the percentage of fund approach because "if class counsel invested too many hours, dallied when preparing the settlement, or otherwise ran the meter, the loss falls on counsel themselves"); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (using percentage of the fund approach in FLSA settlement). Whereas "[t]he lodestar create[s] an unanticipated disincentive to early settlements," (*Carlson v. Xerox Corp.*, 596 F.Supp.3d 400, 405 (D. Conn.

11

2009)), "[a]warding attorney's fees through a percentage of common fund is consistent with the need to incentivize lawyers to resolve cases early and to avoid over-litigating them in order to recover a large fee." *McCue v. MB Fin., Inc.*, No. 15-cv-988, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015); *see also Martin v. Dun & Bradstreet, Inc.*, No. 1:12-cv- 215, 2014 WL 9913504, at *1 (N.D. Ill. Jan. 16, 2014). Under the percentage of fund analysis, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F.Supp. 382, 386 (N.D. Ill. 1996). Likewise, the percentage of fund method conserves judicial resources. *See Hensley v. Eckhart*, 461 U.S. 424, 437 (1983) (fee requests "should not result in a second major litigation").

Here, the Agreement contemplates Plaintiffs' attorney's fees being paid as one-third of the total settlement amount. District Courts in Illinois routinely approve one-third of the settlement fund as attorneys' fees in FLSA wage and hour settlements. *See, e.g., Castillo*, 2016 WL 7451626, at *3-4 (awarding one-third of a $3,000,000 settled fund in FLSA overtime action); *Furman*, 2017 WL 1730995, at *3-4 (awarding one-third of a $990,000 settlement in FLSA overtime action); *Briggs*, 2016 WL 5109196, at *3-4 (awarding one-third of $2,825,000 settlement fund in FLSA overtime case); *Zolkos*, 2012 WL 4275540, at *3 (awarding one-third of $3,350,000 settlement in FLSA claim); *Day*, 2018 WL 24673472, at *2-3 (awarding one-third of $900,000 settlement in FLSA matter).

In awarding attorneys' fees, courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and normal rate of compensation in the market at the time." *Castillo*, 2016 WL 7451626, at *4 (citing *id.*). District courts must "undertake an analysis of the terms to which private plaintiffs and their attorneys contracted at the outset of litigation when the risk of loss still existed." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th

Cir. 2007). They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases…" *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). Moreover, "Courts within this District have also recognized that a fee award of 33 1/3% is in fact in 'line with that which has, in previous cases, been approved…" *Steele v. GE Bank*, No. 1:08-cv-1880, 2011 WL 13266250, at *6 (N.D. Ill. May 17, 2011); *see also* 4 Robert Newberg, *Newberg on Class Action* § 14.6 (4th ed. 2002) ("[F]ee awards in class actions average one-third of the recovery[.]").

Here, the request for one-third of the settlement amount is reasonable. The competence of Plaintiffs' Counsel led to an efficient resolution which created a substantial benefit to the Collective. *See Day*, 2018 WL 2473472, at * 2 (finding one-third award of $900,000 is appropriate because Plaintiff's counsel accomplished "early resolution of the case without wasteful litigation to increase lodestar hours."). The above decisions in *Castillo*, *Furman*, *Briggs*, *Zolkos*, and *Day* comport with the Seventh Circuit's instruction on market price application to percentage of fund awards in *In re Synthroid Mktg. Litig.*

In fact, the gross settlement amount proposed by Scott A. Shore, factored in a 1/3 attorney fee in calculating his gross settlement proposal of $750,000 so that the Collective would be entitled to "nearly $450,000" after fees and costs. Report of Mediation ¶6. In fact, the net settlement amount *exceeds* the $450,000 anticipated by the mediator's proposal; after attorneys' fees and costs, administration fees, and service payments, the net settlement amount will be no less than $457,200.00.

Second, the substantial benefit conferred upon the Collective justifies the fee award. The settlement provides significant value to those who elect to participate. At the same time, it offers individuals who do not wish to release their claims the ability to pursue their claims elsewhere. *See*

13

*Ramah v. Navajo Chapter v. Babbitt*, 50 F.Supp.2d 1091, 1103-04 (D.N.M. 1999) (absence of overly broad release supports fee award). This is preferable to a Rule 23 settlement which often require class members to submit a claim form to participate in the payment and always require class members to submit an opt-out form if they do not want to release their claims. Here, all that is required of the Collective Members to receive their share is to endorse their check. All that is required of the Collective Members to not participate in the release is to not endorse their check for their settlement share.

Third, the early resolution obtained means Collective Members are not required to wait for years before receiving payment. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at * 2 (S.D.N.Y. 2012) (endorsing early settlement of wage and hour class actions); *see also Day*, 2018 WL 247342, at *2 (encouraging early resolution to avoid "wasteful litigation").

Fourth, the risk of non-payment was substantial. In pursuing this claim, Plaintiffs' Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Plaintiffs and similarly situated employees. *Taubenfeld*, 415 F.3d at 600 (approving district court's reliance on this factor in evaluating attorney's fees). Plaintiffs' Counsel represented Plaintiffs on a contingency fee basis with a strong risk that they would receive no fee. *See Sutton*, 504 F.3d 688, 693-94 ("there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts when representing a class because their fee is linked to the success of the suit."); *see also Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (stating Plaintiff's Counsel "could have lost [and could still lose] everything invested").

Fifth, the contingency fee agreement entered into between Plaintiffs and Plaintiffs' Counsel for one-third justifies the request; *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (noting that *ex ante* agreements better approximate the prevailing market rate between

willing buyers and sellers of legal services).

Lastly, the Settlement Agreement calls for up to $7,800 in costs advanced to be reimbursed. These costs consist of the costs of the private mediation, filing fees, and travel. (*See* Fradin Decl. at ¶ 12.). This amount is modest, particularly in relation to the total amount of the Settlement. Moreover, the majority of the costs to be reimbursed resulted from the private mediation. Without that private mediation, the parties would most likely have no Settlement.

**VI.     Conclusion**

For the reasons stated above, Plaintiffs respectfully request that the Court approve the Revised Settlement and issue an Order directing the entry of final judgment and dismissing this Action without prejudice to convert to a dismissal with prejudice in 135 days without further action of this Court.

Dated:  August 26, 2025

By: /s/ Michael L. Fradin
Michael L. Fradin
Michael L Fradin, Attorney at Law
8401 Crawford Ave., Suite 104
Skokie, Illinois 60076
Telephone: (847) 986-5889
mike@fradinlaw.com

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 26th day of August, 2025, the foregoing was filed using the Court's CM/ECF system and will be served via the Court's CM/ECF filing system.

                              *s/ Michael L. Fradin*
                              Attorney for Plaintiffs