UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| **Gregory Fondren and Latasha Wilson, individually and on behalf of all others similarly situated,** | |
| **Plaintiffs,** | No.  24-cv-01299 |
| v. | Judge Michael M. Mihm |
| **Superior Consolidated Industries, Inc.** | |
| **Defendant.** | |

## (REVISED) SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Defendant, Superior Consolidated Industries, Inc. (hereinafter, "Superior" or "Defendant") and all related companies, successors, subsidiaries, affiliates, joint ventures, owners, indirect and direct parents, partners, and their respective officers, directors, shareholders, members, owners, partners, investors, potential investors, insurers, administrators, plan administrators, trustees, attorneys, representatives, managers, employees, and agents (collectively the "Released Parties"), and Named Plaintiffs Gregory Fondren and Latasha Wilson, on behalf of themselves and all putative collective members (collectively "Plaintiffs"). Hereinafter, Plaintiffs and Defendant are referred to collectively as the "Parties" or individually as a "Party."

WHEREAS, on August 25, 2024, Plaintiffs filed a lawsuit against Defendant in the United States District Court for the Central District of Illinois, identified as *Fondren v. Superior Consolidated Industries, Inc.* Case No. 24-cv-01299 (the "Lawsuit"). The Lawsuit is assigned to the Honorable Michael M. Mihm in the U.S. District Court for the Central District of Illinois (the "Court").

Plaintiffs filed this action as a collective action under the FLSA and as a class action under the IMWL. Plaintiffs initiated this action on behalf of themselves and all other persons similarly situated, seeking damages for alleged violations of the FLSA and the IMWL [ECF No. 1]. In general, Plaintiffs alleged that Defendant violated the FLSA and IMWL by failing to pay Plaintiffs and the putative collective members the proper overtime rate when calculating their regular rate of pay in connection with various forms of non-discretionary compensation earned in weeks during which they worked overtime hours and in failing to compensate employees for time spent putting on and taking off protective equipment.

WHEREAS, in the Lawsuit, Plaintiffs allege that Defendant failed to pay proper overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105.

WHEREAS, on June 22, 2025, the Parties attended an all-day mediation with an experienced mediator, Scott A. Shore. At the close of the mediation, the parties reached a mutually agreeable resolution of the Lawsuit.

WHEREAS, Defendant expressly denies the allegations contained in Plaintiffs' Lawsuit or that it violated any federal, state or local law, breached any duty, failed to pay any employees as required by law, or engaged in any other unlawful conduct, Defendant nevertheless desires to settle the Lawsuit on the terms and conditions set forth in this Agreement.

WHEREAS, the Parties have agreed to resolve the claims alleged in the Lawsuit by entering into this Agreement and by dismissing the Lawsuit with prejudice.

WHEREAS, the Parties were each represented by attorneys throughout the negotiations that culminated in the settlement and this Agreement, and said attorneys are experienced in handling collective actions arising under the FLSA.

WHEREAS, the Parties agree and acknowledge that this Agreement represents a fair and reasonable compromise of Plaintiffs' claims, which the Parties recognize would otherwise require extensive litigation to fully determine and resolve.

WHEREAS, the Parties agree that this Agreement is based upon the exchange of good and valuable consideration between them as set forth more fully herein, the adequacy or sufficiency of which is hereby acknowledged by all Parties.

WHEREAS this Revised Settlement Agreement amends the July 19, 2025 Settlement Agreement, and the August 26, 2025 Amendment by Interlineation and resolves wage-and-hour claims under the FLSA, 29 U.S.C. § 201, *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105, on behalf of the following class:

> **All non-exempt hourly employees who worked over 40 hours in a week for Superior Consolidated Industries, Inc. between August 25, 2021 and June 22, 2025 and were paid a bonus and who participate in the settlement by endorsing a settlement check.**

NOW, THEREFORE, in sole consideration for the promises and covenants set forth herein, the Parties agree as follows:

**A.  Definitions**

1. "Approval Order" means the order entered by the Court approving this Agreement.

2. "Attorney's Fees and Costs" means the amount paid to Plaintiffs' counsel as attorneys' fees and litigation expenses, including all cost related to administration of the settlement.

3. "Effective Date" means the date upon which this Agreement is fully executed by all Parties.

4. "Eligible Employee" means all non-exempt hourly employees of Defendant's during the Relevant Period who worked more than 40 hours in a week and were paid a bonus.

5. "Gross Settlement Amount" means the total amount of money Defendant will pay to the Named Plaintiff, the Eligible Employees, and Plaintiffs' counsel.

6. "Individual Settlement Payment" means the payment to Participating Plaintiffs via a settlement check pursuant to the terms of this Agreement and the Approval Order.

7. "Named Plaintiffs" means Plaintiffs Gregory Fondren and Latasha Wilson.

8. "Net Settlement Amount" means the total amount of monies available to calculate Individual Settlement Payment after subtracting the Service Award and Plaintiffs' Attorney's Fees and Costs from the Gross Settlement Amount.

9. "Participating Plaintiffs" means an Eligible Employee who cashes or otherwise negotiates his or her Individual Settlement Payment and releases his or her claims against Defendant.

10. "Relevant Period" means the period of time covered for purposes of calculating Individual Settlement Payments and also the period of time for which the release is applicable, which is August 25, 2021 through June 22, 2025.

11. "Service Award" means the amount paid to the Named Plaintiffs in addition to any Individual Settlement Payment.

12. "Settlement Administrator" means Rust Consulting, who shall be responsible for duties necessary to send the Settlement Notice and Individual Settlement Payments to each Eligible Employee.

13. "Settlement Notice" means the written notification each Eligible Employee will receive which explains the settlement and their right to participate, a draft copy of which is attached as **Exhibit A**.

14. "Settlement Notice Packet" means the mailing the Settlement Administrator will send to each Eligible Employee containing the Settlement Notice and an Individual Settlement Payment.

**B.    Defendant's Payment Obligations**

1.    <u>Gross Settlement Amount</u>.  In consideration for the dismissal with prejudice of the Lawsuit as well as the release of claims effected by this Agreement and other good and valuable consideration, Defendant shall pay a maximum of Seven Hundred and Fifty Thousand Dollars and No Cents ($750,000.00). Subject to the terms of this Agreement, the Gross Settlement Amount is inclusive of payment for: (a) all Eligible Employees, or their respective authorized legal representatives; (b) the Service Awards and general release payments approved by the Court for the Named Plaintiffs; (c) all Attorneys' Fees and Costs approved by the Court, including those in connection with securing Court approval of this Agreement, other than fees and costs awarded in connection with any successful proceeding to enforce the terms of this Agreement; (d) the Participating Plaintiff's share of applicable federal, state and local taxes required to be withheld by Defendant. The Gross Settlement Amount shall be the maximum amount that Defendant or the Released Parties (as defined below) are required to pay to settle the Action and assumes 100% of the Eligible Employees cash or otherwise negotiate their checks and become Participating Plaintiff.

2.    <u>Settlement Administrator and Employer's Withholdings</u>. The Parties will be responsible for the fees and costs incurred by the Settlement Administrator (estimated to not exceed $20,000.00) which are to be paid from the Gross Settlement Amount. Defendant will be responsible

for payroll tax obligations and/or the employer's share of taxes for settlement purposes distributed to Participating Plaintiff in addition to the Gross Settlement Amount.

**C.    Timing of Payments**

1.    Within thirty (30) days after the later of (1) the date of approval of the Settlement, and (2) the selection of the Settlement Administrator by the Parties, the Defendant shall pay the Gross Settlement Amount to the Settlement Administrator. Upon receipt by the Settlement Administrator of the Gross Settlement Amount, the Settlement Administrator shall be authorized to pay:

  a. any approved Service Award to the Named Plaintiffs by First Class U.S. Mail or by other means agreed to by Plaintiffs' Counsel and the Settlement Administrator; and

  b. the Attorneys' Fees and Costs to Plaintiffs' counsel by First Class U.S. Mail or by other means agreed to by Plaintiffs' Counsel and the Settlement Administrator.

**D.    Settlement Administration**

1.    Selection of Settlement Administrator. The Settlement Administrator shall be Rust Consulting. In the event that Rust Consulting is unable to administer the Settlement, the Parties shall cooperate to select an alternative Settlement Administrator.

2.    Settlement Administrator Responsibilities.  The Settlement Administrator shall be responsible for: (a) determining tax withholding amounts for the Eligible Employees, based on the Individual Settlement Payments; (b) preparing, printing, and disseminating to the Settlement Notice Packet by U.S. First Class Mail (including the Settlement Notice and the Individual Settlement Payments) and paying Service Awards and Attorney Fees and Costs as approved by the Court; (c) copying counsel for all Parties on material correspondence and promptly notifying Counsel of any

material requests or communications made by any Eligible Employees who receive the Settlement Notice; (d) withholding and paying all payroll tax obligations of Participating Plaintiff in accordance with applicable law and timely notifying Defendant of the employer's share of payroll tax obligations in accordance with this Agreement; (e) issuing W-2 and 1099 Forms, as applicable, for all amounts paid to Participating Plaintiffs, Named Plaintiffs, and Plaintiffs' counsel; (f) taking steps to reasonably ascertain the current address and addressee information for each Settlement Notice Packet returned as undeliverable or for which it receives notice that a mailed Settlement Notice Packet was otherwise not delivered; (g) referring to Plaintiffs' counsel all inquiries by the Eligible Employees which the Settlement Administrator cannot resolve and/or which involve matters not within the Settlement Administrator's duties specified herein; (h) responding to inquiries of the Plaintiffs' and Defendant's counsel; (i) promptly apprising counsel for the Parties of the activities of the Settlement Administrator; (j) maintaining adequate records of its activities, including the date of the mailing of the Settlement Notice Packets and receipt of negotiated checks, returned mail, and other communications and attempted written or electronic communications with the Eligible Employees; (k) confirming in writing to Plaintiffs' and Defendant's counsel its completion of the administration of the settlement and retaining copies of all endorsed settlement checks; (l) completing a declaration identifying all Eligible Employees, including the Named Plaintiffs, who cash a Settlement Check, and providing a copy of the endorsed and deposited Settlement Check(s) to the counsel for the Parties, who may file same with the Court and said checks shall act as a consent to join under 29 U.S.C. § 216(b); (m) timely responding to communications from the Parties or their counsel; (n) issuing unclaimed (retained) funds to the Defendant under the terms of this Agreement; and (o) such other tasks as the Parties mutually agree.

3. <u>Reporting by Settlement Claims Administrator</u>. Throughout the administration period, the Settlement Administrator will provide reports to the Parties every seven days or upon request by either Party, the status of the distribution of the Settlement Notice Packets to Eligible Employees, the receipt by the Settlement Administrator of endorsed settlement checks, and a report on any other aspect of the claims administration process the Parties reasonably request.

E. **Creation and Implementation of a Qualified Settlement Fund**

1. <u>Establishing the Qualified Settlement Fund.</u> Funds paid by Defendant pursuant to this Agreement shall be deposited in an account established by the Settlement Administrator (the "Qualified Settlement Fund"), which shall be a "qualified settlement fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.* The Qualified Settlement Fund shall be administered by the Settlement Administrator, subject to the ultimate authority of the Court.

2. <u>Administering the Qualified Settlement Fund</u>. The Settlement Administrator shall serve as Trustee of the Qualified Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Qualified Settlement Fund, including the handling of tax-related issues and payments. The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.

3. <u>Tax Withholding and Reporting</u>. The Settlement Administrator shall be responsible for withholding and timely remitting and reporting to the appropriate taxing authorities the employee's share of payroll taxes from the wage payments of each Participating Plaintiffs. The Settlement Administrator shall also be responsible for calculating and timely notifying Defendant of the employer's share of payroll taxes or contributions (*i.e.* FICA, FUTA, SUTA, and Medicare) relating to

the wage payments of each Named Plaintiff and Participating Plaintiffs, which will be paid separately to the Settlement Administrator by Defendant within fourteen (14) days of notification by the Settlement Administrator of the amount of the Employer's share of payroll taxes or contributions. Subject to the Settlement Administrator's obligation to comply with applicable laws, the Parties anticipate that any amounts designated as liquidated damages or interest shall not be subject to withholding and shall be reported to the IRS on Form 1099 by the Settlement Administrator.

      4.     <u>Communication with Counsel</u>.  Defendant's counsel and Plaintiffs' counsel are authorized to communicate directly with the Settlement Administrator to expedite the settlement administration process.

**F.**     **<u>Allocation of the Gross Settlement Amount</u>**

      1.     <u>Net Settlement Amount.</u>  The amounts approved by the Court for Service Awards, Attorney's Fees and Costs, and costs of Settlement Administration shall be deducted from the Gross Settlement Amount to determine the amount of the Net Settlement Amount.

      2.     <u>Allocation of Net Settlement Amount.</u>  All Eligible Employees shall be paid a portion of the Net Settlement Amount pursuant to a formula which will generally differ based on Defendant's payroll data during the Relevant Period. For the purpose of informing Eligible Employees of their Individual Settlement Payment, the estimated respective Individual Settlement Payment for each Eligible Employee shall be disclosed to each Eligible Employee in the Settlement Notice Packet.

      3.     <u>Service Award.</u>  From the Gross Settlement Amount, Plaintiffs shall seek Service Awards of Seven Thousand Five Hundred Dollars and Zero Cents ($7,500.00) for each Named Plaintiff for a general release of all their claims against Defendant, for their involvement in commencing and discovering the claims represented in this Lawsuit, and for their involvement in

settlement negotiations for the benefit of all Eligible Employees. Defendant does not dispute, based on its review of all relevant factors, that the Service Awards sought by the Named Plaintiffs are reasonable. Any Service Award approved by the Court shall be deemed non-wage compensation in its entirety for Named Plaintiffs and shall be reported on an IRS Form 1099. Any amount of the requested Service Award not approved by the Court shall be included as part of the Net Settlement Amount.

    4.    <u>Attorneys' Fees and Costs</u>. Plaintiffs' Counsel shall receive 1/3 of the Gross Settlement Amount as an award of attorneys' fees in addition to reimbursement of litigation expenses not to exceed Seven Thousand Eight Hundred Dollars and Zero Cents ($7,800.00). Additionally, from the Gross Settlement Amount, the Settlement Administrator shall be costs of settlement administration expenses not to exceed Twenty Thousand Dollars and Zero Cents ($20,000.00). Defendant agrees not to dispute that this amount of fees and costs sought by Plaintiffs is reasonable. Payment of the Court approved attorneys' fees and costs to Plaintiffs' counsel shall be made in accordance with this Agreement and shall constitute full satisfaction of all obligations by Defendant to pay any person, attorney, expert, law firm for attorneys' fees or costs incurred on behalf of the Named Plaintiffs and Participating Plaintiffs. The payment of Attorneys' Fees and Costs shall be reported to Plaintiffs' counsel on an IRS Form 1099. Any amount of the Attorneys' Fees and Costs not approved by the Court shall be included as part of the Net Settlement Amount.

**G.**    <u>**Payments to Eligible Employees**</u>

    1.    <u>Timing of Payments.</u> Within thirty (30) days of the payment by Defendant of the Gross Settlement Amount, the Settlement Administrator will transmit all Settlement Notice Packets to Eligible Employees via First Class U.S. Mail to the last known address for each Eligible Employee,

or such other address provided by the Eligible Employee to the Settlement Administrator. The Settlement Administrator may extend the mailing date for good cause.

       2.    <u>Tax Treatment of the Settlement Payments.</u>  The settlement payments attributed to the Eligible Employees shall be allocated 50 percent (50%) to back wages and 50 percent (50%) to liquidated damages. The back wages shall be subject to all required employee-paid payroll taxes (federal income taxes, state income taxes, employee's share of FICA and FUTA taxes, and other state or local-specific statutory deductions) and other authorized or required deductions (garnishments, tax liens, child support, etc.). The liquidated damages shall be treated as non-wage income to the Eligible Employees. The Settlement Administrator shall report the back wage payments to the Internal Revenue Service ("IRS") on IRS Form W-2 and shall report the liquidated damages on IRS Form 1099.

       3.    <u>Tax Responsibilities, Tax Advice, and Indemnification.</u>  Other than the withholding and reporting requirements set forth herein, the Participating Plaintiff shall be solely responsible for any necessary reporting of their respective shares of any federal, state, and/or local income or other tax, if any, on the settlement payments. Named Plaintiffs agree and acknowledge that they have not relied upon any advice from Defendant's or Plaintiffs' counsel as to the taxability of the payments received pursuant to this Agreement. As to the payments treated and reported as non-wages, Named Plaintiffs agree to hold Defendant harmless for any tax due or owing by them on such payments.

       4.    <u>Negotiation of Settlement Checks and Retention</u>.  The negotiating of a settlement check by any Participating Plaintiffs provides sufficient consideration for his or her release of claims. Eligible Employees will have ninety (90) days after the Settlement Notice Packets are mailed in which to deposit or otherwise negotiate their settlement checks. However, settlement checks not cashed or

11

**Execution Copy**

negotiated within ninety (90) days may be reissued once if the Parties mutually agree, or if the Settlement Administrator determines that there is good cause to do so with respect to a particular settlement check(s). If an Eligible Employee does not negotiate his or her settlement check within ninety (90) days of issuance, or thirty (30) days after reissuance, whichever is later, the funds related to the Eligible Employee's settlement payment will be designated as "Unclaimed Funds."

Any funds remaining in the Net Settlement Amount after payment to: (a) Participating Plaintiffs; (b) the Service Award to Named Plaintiffs approved by the Court; (c) the Attorney's Fees and Costs to Plaintiffs' Counsel; (d) settlement administration fees; and (e) applicable withheld federal, state and local income taxes withheld from payments to the Participating Plaintiffs, shall be designated as "Unclaimed Funds." All Unclaimed Funds shall be returned to the Defendant within thirty (30) days following the date they are finally determined to be Unclaimed Funds by the Settlement Administrator.

**H.    Release of Claims**

1.    <u>Specific Release by Participating Plaintiffs</u>. Conditioned upon the entry of the Approval Order, and in exchange for the monetary consideration recited in this Agreement, Named Plaintiffs hereby agree to dismiss the Lawsuit with prejudice, and they and all Participating Plaintiffs will release Defendant, including any and all of Defendant's predecessors, related companies, successors, subsidiaries, affiliates, joint ventures, owners, indirect and direct parents, partners, and their respective officers, directors, shareholders, members, owners, partners, investors, insurers, administrators, plan administrators, trustees, attorneys, representatives, managers, employees, and agents (collectively the "Released Parties") from any and all federal and state wage-and-hour claims arising during the period of August 25, 2021 through June 22, 2025, which were or could have been

included in *Fondren v. Superior Consolidated Industries, Inc.* Case No. 24-cv-01299 (C.D. IL), including, but not limited to, all federal and state claims for overtime and minimum wages related to putting on and taking off protective equipment and overtime calculations based on bonuses Defendant paid, and related penalties, interest, liquidated damages, attorneys' fees, and costs. Notwithstanding the foregoing, nothing in this Agreement is intended to operate as, nor shall be construed as, a release or waiver of any rights and/or claims that cannot be released or waived as a matter of law. This release shall not limit Plaintiffs' ability to communicate with any Government Agencies or otherwise participate in any investigation or proceeding that may be conducted by any Government Agency as required by law.

2. <u>Release by Named Plaintiffs</u>: Named Plaintiffs Gregory Fondren and Latasha Wilson, individually, on behalf of themselves as well as all heirs, and assignees, in addition to the release provided for under paragraph H(1), do forever release and discharge the Defendant and all Released Parties of and from any all claims of any nature whatsoever that accrued during their employment with Defendant, known or unknown, that they have or may have against any Released Party. The release under this paragraph applies from the beginning of time until the date of execution of this Settlement Agreement. The release provided for under this paragraph is a general release and shall be interpreted as broadly as the law permits.

3. <u>Release Language on Settlement Checks</u>.  Each Individual Settlement Payment issued to Eligible Employees will contain the following release language on the back of the check:

> I knowingly and voluntarily release, waive, and discharge Superior Consolidated Industries, Inc. and all other Released Parties, from any and all federal and state wage-and-hour claims arising during the period of August 25, 2021 through June 22, 2025, which were or could have been included in *Fondren v. Superior Consolidated Industries, Inc.* Case No. 24-cv-01299 (C.D. IL), including, but not limited to, all federal, and state claims for overtime and minimum wages related to putting on

13

**Execution Copy**

and taking off protective equipment and overtime calculations based on bonuses Defendant paid, and related penalties, interest, liquidated damages, attorneys' fees, and costs.

By negotiating the settlement check, all Participating Plaintiffs are fully bound by the release described in this Agreement.

4.   <u>No Admission of Liability and Non-Admissibility</u>. By entering into this Agreement, Plaintiffs understand that Defendant does not admit, and specifically denies, any liability or wrongdoing as alleged in the Lawsuit as well as the fact and/or amount of damages, and that Defendant is entering into this Agreement solely for the purposes of avoiding costs of litigation and amicably resolving all disputes and causes of action brought by Plaintiffs against Defendant. This Agreement does not constitute an admission by Defendant or by any Released Party of any violation of any federal, state, local or common law or statute. In addition, this Agreement does not constitute an admission by Defendant or any Released Party of any violation of any contract, term of a collective bargaining agreement, or other legal duty. Rather this Agreement is entered into for the sole purpose of resolving a doubtful and disputed claim. Neither this Agreement nor anything in this Agreement shall be construed to be admissible, or shall be admissible, in any proceeding as evidence of wrongdoing by Defendant or any Released Party.

**I.   Dismissal of Lawsuit**

1.   <u>Approval Motion</u>. Within fourteen (14) days of the Effective Date, Plaintiffs will prepare and file an unopposed motion to approve this Agreement. If for any reason the Court will not approve this Agreement as drafted, the Parties agree to work together in good faith to reform this Agreement as necessary for it to be approved by the Court. To the extent the Court will not approve this Agreement, and the Parties are unable to reform the Agreement despite their good-faith efforts

to do so, this Agreement shall be null and void.

    2.    <u>Stipulated Order of Dismissal</u>. Upon the Court entering its Approval Order the Parties will sign and submit a stipulated order dismissing the Lawsuit with prejudice (if necessary) attached hereto as **Exhibit B.**

**J.**    **Miscellaneous**

    1.    The Parties agree that this Agreement is enforceable in a court of law. The Parties acknowledge that this Agreement constitutes a complete accord with respect to all claims, demands, or causes of action that have been released by this Agreement and that the Parties' sole remedy for breach of this Agreement is specific enforcement of its terms.

    2.    If any court shall determine that any provision herein is unenforceable, the Parties agree that any such provision, or part thereof, shall be reformed and construed consistent with the apparent purpose of the provision in order to avoid its unenforceability or, in the event that reformation is not possible, the provision shall be severed, and all remaining provisions shall remain in full force and effect.

    3.    Named Plaintiffs wholly rely upon their own judgment in executing this Agreement. Named Plaintiffs have had an opportunity to consult attorneys and understand that if they went forward with a claim, they could have a better result than that achieved here, the same result as achieved here, or a worse result than that achieved here. Named Plaintiffs have carefully read this Agreement in its entirety and voluntarily and willingly signs the same as a free act.

    4.    The Parties agree that this Agreement is to be construed in accordance with the laws of the State of Illinois.

5.  This Agreement may be executed in counterparts and by facsimile or scanned document, each of which shall be considered equally authentic and together shall be deemed to be one in the same document.

6.  The Parties acknowledge that the promises and covenants contained in this Agreement are the sole and total agreement of the Parties with respect to the matters set forth herein; that there are no covenants, promises, agreements or representations with respect to the matters set forth herein other than as contained in this Agreement; and that in accepting the terms of this Agreement, Named Plaintiffs have not relied upon any promises, covenants, agreements or representations with respect to the matters set forth herein other than as expressed in this Agreement.

7.  The Parties agree that the terms of this Agreement cannot be changed, altered, modified, amended, or added to except in a writing that specifically refers to this Agreement and is signed by the Parties. The Parties expressly waive application of any local, state, federal, or foreign law, statute or judicial decision allowing verbal modifications, amendments, or additions to a contract notwithstanding an express provision requiring a writing signed by the Parties.

8.  This Agreement shall be inadmissible as evidence in any proceeding, except in an action or proceeding to approve, interpret, or enforce its terms.

9.  **THE PARTIES CERTIFY THAT THEY HAVE READ ALL OF THIS SETTLEMENT AGREEMENT AND FULLY UNDERSTAND ALL OF THE TERMS AND THEIR SIGNIFICANCE AND HAVE SIGNED THIS SETTLEMENT AGREEMENT FREELY, KNOWINGLY, AND VOLUNTARILY.**

**Signature Page to Follow**

_____    9/26/2025
Gregory Fondren, Named Plaintiff            _____
                                            Date

_____    9/27/2025
Latasha Wilson, Named Plaintiff            _____
                                            Date


Superior Consolidated Industries, Inc.

_____    _____
                                            Date

By: _____

Its: _____


4902-9702-9484, v. 2

17

**Execution Copy**